**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **SIMCOA OPERATIONS PTY LTD.**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UNITED STATES,**<br><br>**Defendant.** | **Ct. No. 26-04038**<br><br>**Before: Unassigned.** |

# COMPLAINT

Plaintiff, Simcoa Operations Pty Ltd. ("Simcoa"), by and through counsel, brings this Complaint against the United States of America, and alleges as follows:

## DETERMINATION TO BE REVIEWED

1. Simcoa contests the final determination of the U.S. Department of Commerce ("Commerce" or the "Department") that countervailable subsidies are being provided to producers and exporters of silicon metal from Australia. *Silicon Metal From Australia: Final Affirmative Countervailing Duty Determination*, 91 Fed. Reg. 39,598 (Dep't Commerce June 30, 2026) ("Final Determination") and accompanying Memorandum from Erin Begnal to Scot Fullerton, *Issues and Decision Memorandum for the Final Affirmative Determination of the Countervailing Duty Investigation of Silicon Metal from Australia*, Case No. C-602-814 (Investigation) (June 24, 2026), ACCESS 4931039-02 ("Final IDM"), and Memorandum from Kyle Clahane to Erin Begnal, *Countervailing Duty Investigation of Silicon Metal from Australia: Ministerial Error Analysis Memorandum*, Case No. C-602-814 (Investigation) (Aug. 10, 2026) ACCESS 4943495-01 ("Ministerial Error Memo").

## JURISDICTION

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c). That section confers on the U.S. Court of International Trade jurisdiction to review, *inter alia*, final determinations issued by Commerce under Section 516A(a)(2)(A)(i) and (B)(i) of the Tariff Act of 1930, as amended (the "Act"), 19 U.S.C. §§ 1516a(a)(2)(A)(i), (B)(i).

## NAME AND STANDING OF PLAINTIFF

3. Simcoa is a foreign producer and exporter, and U.S. importer, of silicon metal from Australia. Simcoa participated in the countervailing duty ("CVD") investigation that led to the challenged Final Determination through the submission of arguments and factual information as the sole mandatory respondent subject to individual investigation. Simcoa is therefore an interested party to the proceeding within the meaning of Section 771(9)(A) of the Act, 19 U.S.C. § 1677(9)(A), and has standing to bring this action under 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## TIMELINESS OF THIS ACTION

4. Section 516A(a)(2)(A)(i)(II) of the Act requires that, in actions challenging Commerce's determinations described in Section 516A(a)(2)(B)(i), the summons must be filed within thirty (30) days of the date of publication in the *Federal Register* of the resulting CVD order, and the complaint must be filed within thirty (30) days thereafter. 19 U.S.C. § 1516a(a)(2)(A)(i)(II). Commerce rendered the Final Determination on June 24, 2026, and then published the Final Determination in the *Federal Register* on June 30, 2026. Final Determination at 39,598, 39,600. The CVD order was published in the *Federal Register* on August 21, 2026. *Silicon Metal from Australia and Norway: Countervailing Duty Orders*, 91 Fed. Reg. 54,305 (Dep't Commerce Aug. 21, 2026). On September 18, 2026, within thirty (30) days of Commerce's

August 21, 2026 publication of the CVD order, Simcoa filed its summons with this Court. On October 19, 2026, the first business day following thirty (30) days thereafter, Simcoa filed this Complaint. CIT R. 6(a)(1)(B). This action is thus timely.

## STANDARD OF REVIEW

5. This Court reviews final determinations issued by Commerce under 19 U.S.C. § 1671d to determine whether they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

## STATEMENT OF FACTS

6. Simcoa is a silicon metal producer legally domiciled and incorporated in Australia, registered under the laws of the state of Western Australia, and maintaining its principal office and place of business in Bunbury, Western Australia. Simcoa is the only producer of silicon metal in Australia and supplies silicon metal to the Australian and global markets.

7. Silicon Metal Company of Australia Pty Ltd ("SILMET") is the parent company for Simcoa and owns and controls 100 percent of Simcoa. SILMET additionally owns and controls Simcoa Mines Pty Ltd. ("Simcoa Mines") and Microsilica Pty Ltd. ("Microsilica"). Simcoa Mines operates the quartz mines for supply to Simcoa, and Microsilica markets and sells silica fume, which is a byproduct of the silicon metal production process. SILMET is a direct subsidiary of and owned 100 percent by Shin-Etsu Chemical Company, located in Japan. *See Silicon Metal from Australia: Response to Section III — Part I "Affiliated Companies" of the Department's Initial Questionnaire*, Case No. C-602-814 (Investigation) (June 20, 2025) ACCESS 4780705-01 at 1–6.

8. On April 24, 2025, Commerce received a petition concerning imports of silicon metal from Australia, filed on behalf of Ferroglobe USA, Inc., and Mississippi Silicon LLC (the

"Petitioners"). *See* Memorandum from Scot Fullerton to Christopher Abbott, *Decision Memorandum for the Preliminary Affirmative Determination of the Countervailing Duty Investigation of Silicon metal from Australia*, Case No. C-602-814 (Investigation) (Dep't Commerce Sep. 22, 2025) at 1, ACCESS 4829735-01 ("Prelim. IDM"). On May 21, 2025, Commerce initiated the CVD investigation of silicon metal from Australia, specifying a period of investigation ("POI") of January 1, 2024, through December 31, 2024. *Silicon Metal From Australia, the Lao People's Democratic Republic, Norway, and Thailand: Initiation of Countervailing Duty Investigations*, 90 Fed. Reg. 21,746, 21,747 (Dep't Commerce May 21, 2025) ("Initiation Notice"*)*. In the Initiation Notice, Commerce stated that it intended to select the mandatory respondent based on the information submitted by Petitioners indicating that there is only one company in Australia producing subject merchandise (Simcoa). *Id.* at 21,749; Prelim. IDM at 3. On June 6, 2025, Commerce issued the initial CVD questionnaire to the Government of Australia ("GOA"), requesting responses from both the GOA and Simcoa. *See* Prelim IDM at 3. Commerce specified an average useful life ("AUL") for this investigation of 14 years. *Id.* at 5.

9. Simcoa and the GOA submitted timely responses for all of their respective questionnaire sections and supplemental questionnaires. *Id* at 3. On September 12, 2025, Simcoa and the GOA provided comments for consideration in advance of the Preliminary Determination. *Id.* at 4; *Silicon Metal from Australia: Comments in Advance of the Preliminary Determination*, Case No. C-602-814 (Investigation) (Sep. 12, 2025), ACCESS 4825067-01 ("Simcoa Pre-Prelim. Comments").

10. Commerce published its Preliminary Determination on September 22, 2025. *Silicon Metal From Australia: Preliminary Affirmative Countervailing Duty Determination, and Alignment of Final Determination With Final Antidumping Duty Determination*, 90 Fed. Reg.

46,390 (Dep't Commerce Sep. 26, 2025) ("Preliminary Determination"). Commerce determined a preliminary subsidy rate of 41.31 percent for Simcoa, *see id.* at 46,391, based on the following findings:

a. **Provision of Electricity for Less Than Adequate Remuneration ("LTAR"):** Commerce found a subsidy rate of 8.53 percent. Prelim. IDM at 13. Commerce countervailed Simcoa's POI purchases of electricity from retailer Electricity Generation and Retail Corporation trading as Synergy ("Synergy"). *Id.* at 8. Commerce found that electricity prices charged by Simcoa's other electricity retailer, Wesfarmers Kleenheat Gas Pty. Ltd. ("Kleenheat"), provided a tier-one benchmark for its benefit calculations. *Id.* The Department stated that Synergy was an "authority" within the meaning of section 771(5)(B) of the Act and that its provision of electricity to Simcoa was *de facto* specific under section 771(5A)(D)(iii)(II) of the Act. *Id.* at 12–13.

b. **Silicon Mining Rights for LTAR:** Commerce found a subsidy rate of 10.63 percent. *Id.* at 15. Commerce found that the Government of Western Australia's conveyance of the right to extract silica conferred a financial contribution to Simcoa and that this benefit was *de facto* specific because, as the sole producer of silicon metal in Australia, Simcoa was the only recipient of "high purity quartz or silica used in the production of silicon metal." *Id.* at 14. The Department stated that it intended to use CRU data as a tier-three benchmark in its analysis. *Id.*

c. **Research and Development ("R&D") Tax Incentive:** Commerce found a subsidy rate of 0.92 percent. *Id.* at 16. Commerce recognized: "Simcoa stated that it did not claim the R&D Tax Incentive in 2023 or 2024; however, Simcoa explained that

the R&D tax incentive is a non-refundable tax offset that can be carried forward into future tax years." *Id*. at 15–16. Commerce found this program to be *de facto* specific, notwithstanding that, throughout Australia, "11,545 companies received benefits, out of 13,148 applicants, under the R&D Tax Incentive program in 2021 to 2022." *Id*. at 15.

d. **<u>Payments Under the Contingency Reserve Raise ("CRR") Service:</u>** Commerce found a subsidy rate of 12.77 percent (using the name of the program that CRR replaced—Ancillary Service (Spinning Reserve)). *Id*. at 16, 18. Under this mechanism, Simcoa provides "essential system services" to the electricity network operator. *Id*. at 17. Specifically, "under this arrangement, Simcoa's three furnaces can be rapidly disconnected from the {electricity system} to support {wider} system stability{.}" *Id*. To participate in this arrangement, providers like Simcoa "submit real-time offers and payments are determined by market clearing prices determined by the {market operator}." *Id*. at 18. Commerce stated: "The goal of this system is to represent the value of the service provided rather than the cost of service." *Id*. Commerce found the market operator to constitute an "authority" and that CRR payments were a financial contribution. *Id*. The Department concluded that the CRR was *de facto* specific based on the number of recipients compared to registered participants. *Id*. Commerce did not address Simcoa's Pre-Preliminary Determination arguments that the CRR is not countervailable as the sale of a service by Simcoa to a government. Simcoa Pre-Prelim. Comments at 16 ("{T}he purchase of services by a government does not constitute a financial contribution.").

e. **<u>Payments Under the Demand Side Management (“DSM”) Mechanism:</u>** Commerce found a subsidy rate of 4.39 percent. Prelim. IDM at 20. For this electricity demand mechanism, Commerce explained: “{T}he DSM is a service provided to the {market operator} in the form of reserve capacity. Through DSM, the market operator can require a market rule participant to curtail demand, in order to reduce the total load on the network.” *Id.* at 18–19. The Department observed that Simcoa “has provided demand side services with Synergy and Kleenheat that have been in place since 2007 and 2012{.}” *Id.* at 20. Commerce found the market operator to constitute an “authority” and that DSM payments were a financial contribution. *Id.* The Department concluded that the DSM was *de facto* specific based on the number of recipients. *Id.* Commerce concluded that DSM payments transferred through both Synergy and Kleenheat were countervailable, even though Kleenheat is an entirely private entity. Commerce did not address Simcoa’s Pre-Preliminary Determination arguments that the DSM is not countervailable as the sale of a service by Simcoa. Simcoa Pre-Prelim. Comments at 14–15.

f. **<u>Exemption from Renewable Energy Target (“RET”) Program Liability:</u>** Commerce found a subsidy rate of 3.69 percent. Prelim. IDM at 22. Commerce concluded that Synergy was an “authority” that provided a financial contribution through exemptions on RET liabilities. *Id.* The Department found that RET exemptions processed through Kleenheat were not countervailable because Kleenheat is not an “authority.” *Id.* Commerce concluded that the program was *de jure* specific because, throughout Australia, “the benefit is expressly limited by law to enterprises conducting 54 {activities}.” *Id.*

g. **Fuel Tax Credits:** Commerce found a subsidy rate of 0.38 percent. *Id.* at 24. The Department described: "{T}he Fuel Tax Credit scheme is an economy-wide program in Australia that provides a refund of fuel tax (excise duty or customs duty) payable on taxable fuels, like diesel or petrol, used for eligible business purposes." *Id*. at 22–23. Commerce found this program to be *de jure* specific "because access to the lower fuel tax rates {is} expressly limited to companies engaging in eligible business purposes." *Id* at 24.

h. Commerce additionally found the following alleged programs to not be countervailable: Boosting Apprenticeships Commencements; Priority Wage Subsidy; and Parental Leave Salary Support. *Id.* at 24–25.

11. Commerce verified the questionnaire responses of Simcoa in Bunbury, Australia, from February 9–11, 2026, and the questionnaire responses of the GOA in Perth, Australia, from February 12–13, 2026. Memorandum from Kyle Clahane and Laura Delgado to The File, *Countervailing Duty Investigation of Silicon Metal from Australia, Verification of the Questionnaire Responses of Simcoa Operations Pty Ltd.*, Case No. C-602-814 (Investigation) (Mar. 19, 2026), ACCESS 4899617-01 ("Simcoa Verification Report"); Memorandum from Kyle Clahane and Laura Delgado to The File, *Countervailing Duty Investigation of Silicon Metal from Australia, Verification of the Questionnaire Responses of the Government of Australia*, Case No. C-602-814 (Investigation) (Mar. 19, 2026), ACCESS 4899631-01. Commerce verified Simcoa's and the GOA's reporting with respect to the alleged programs and described these meetings in its verification reports. For example, with respect to the CRR, the report notes: "Simcoa's Energy Specialist explained that Simcoa has an automatic electrical relay system set up which automatically shuts off the furnaces once the network frequency drops below a pre-determined

threshold. Company officials explained the formula according to which Simcoa is compensated for providing ancillary services." Simcoa Verification Report at 14.

12. Between April 2 and 6, 2026, Simcoa, the GOA, and Petitioners submitted case briefs. Final IDM at 2. Between April 21 and 29, 2026, the Petitioners, Simcoa, and the GOA submitted rebuttal briefs. *Id.* Simcoa argued that Commerce should correct erroneous findings with respect to each program found to be countervailable in the Preliminary Determination. *See Case Brief of Simcoa*, Case No. C-602-814 (Investigation) (Apr. 6, 2026), ACCESS 4906777-01 ("Simcoa Case Brief"); *Rebuttal Brief of Simcoa*, Case No. C-602-814 (Investigation) (Apr. 21, 2026), ACCESS 4914960-01.

13. Commerce rendered the Final Determination on June 24, 2026. Commerce found a final subsidy rate for Simcoa of 32.57 percent. Final Determination at 39,599. The Department made certain revisions to the Preliminary Determination, including – (a) correcting its use of CRU benchmark data for the Silicon Mining Rights for LTAR, which resulted in no countervailable benefit under this program, and (b) revising its benefit calculation under the RET Exemption to countervail payments processed through Kleenheat, in addition to Synergy. Final IDM at 3. The Final Determination made the following findings:

a. **<u>Provision of Electricity for LTAR:</u>** Commerce found a subsidy rate of 8.54 percent. Final IDM at 5. The Department did not revise its preliminary findings to account for the case brief arguments of Simcoa and the GOA that, *inter alia*: (a) Synergy's electricity sales are not specific; (b) Synergy's prices were negotiated in accordance with market principles; (c) Commerce has elsewhere recognized that Synergy's sale of electricity to Simcoa is not countervailable; and (d) Kleenheat sales were not an appropriate benchmark. Final IDM at 17–21.

b. **<u>Silicon Mining Rights for LTAR:</u>** Commerce found a subsidy rate of 0 percent, after correcting its preliminary use of CRU benchmark data at Simcoa's request. *Id.* at 6, 9.

c. **<u>R&D Tax Incentive:</u>** Commerce found a subsidy rate of 0.92 percent. *Id.* at 5. The Department did not revise its preliminary findings to account for the case brief arguments of the GOA and Simcoa that, *inter alia*: (a) the program is broadly available across the Australian economy and therefore is not specific, and (b) no benefit may be attributed to POI activities because Simcoa did not apply for the tax incentive during the POI. *Id.* at 32–36.

d. **<u>Payments Under the CRR Service:</u>** Commerce found a subsidy rate of 12.78 percent. *Id.* at 5. The Department did not revise its preliminary findings to account for the case brief arguments of Simcoa and the GOA that, *inter alia*: (a) the CRR does not involve a contribution by any "authority"; (b) the CRR mechanism is not specific; and (c) the CRR is not countervailable because it is the sale of a service by Simcoa to a government. *Id.* at 21–27.

e. **<u>Payments Under the DSM Mechanism:</u>** Commerce found a subsidy rate of 4.39 percent. *Id.* at 5. The Department did not revise its preliminary findings to account for the case brief arguments of Simcoa and the GOA that, *inter alia*: (a) the DSM mechanism is not specific; (b) DSM is not countervailable because it is the sale of a service by Simcoa to a government; and (c) payments processed through Kleenheat are not countervailable because Kleenheat is not an "authority." *Id.* at 27–32.

f. **Exemption from RET Program Liability:** Commerce found a subsidy rate of 5.56 percent. *Id*. at 6. The Department did not revise its preliminary findings to account for the case brief arguments of Simcoa and the GOA that, *inter alia*, the RET exemption mechanism is not specific. *Id*. at 15–17. In 2024, 90 Australian companies across 40 industries were issued exemption certificates under the RET. Simcoa Case Brief at 39. Over the objections of Simcoa and the GOA, Commerce revised its preliminary findings to countervail RET exemptions processed through Kleenheat, a private company. Final IDM at 10–15.

g. **Fuel Tax Credits:** Commerce found a subsidy rate of 0.38 percent. *Id*. at 6. The Department did not revise its preliminary findings to account for the case brief arguments of Simcoa and the GOA that, *inter alia*, Fuel Tax Credits are not specific. *Id*. at 36–39.

14. Following Commerce's release of the Final Determination, Simcoa timely filed ministerial error comments on July 13, 2026. Ministerial Error Memo at 1. Simcoa noted that Commerce had determined the CRR and DSM mechanisms to be grants in the Final Determination but had not allocated the benefits received under these alleged programs across the 14-year AUL period, as instructed by Commerce's regulations, 19 C.F.R. § 351.524(c)(1). *Id*. at 2. Simcoa requested that Commerce correct the Final Determination. On August 10, 2026, Commerce declined to act on the ministerial error allegation, calling it a "methodological determination." *Id*. at 3.

15. Commerce published its CVD order on silicon metal from Australia on August 21, 2026. *Countervailing Duty Orders*, 91 Fed. Reg. 54,305.

## STATEMENT OF CLAIMS

## COUNT ONE

**Commerce's Findings Regarding the Countervailability of Electricity Purchases for LTAR Are Not Supported by Substantial Evidence or Otherwise in Accordance with Law**

16. Simcoa hereby incorporates by reference paragraphs 1 through 15 of this Complaint.

17. Commerce's findings regarding the countervailability of Simcoa's electricity purchases from Synergy for LTAR are not supported by substantial evidence or otherwise in accordance with law. Synergy's electricity sales are not specific within the meaning of the statute, 19 U.S.C. § 1677(5A). The availability of the electricity services is widespread, and customers outside of Simcoa's industry use Synergy's services.

18. Simcoa's supply agreement with Synergy was commercially negotiated on market terms and reflects a private agreement between two non-governmental parties. Simcoa's purchases from Synergy thus do not constitute a financial contribution in accordance with 19 U.S.C. § 1677(5).

19. Commerce should not have relied on Kleenheat purchases as a benchmark for the purported benchmark because the Kleenheat agreement was negotiated on different commercial terms and under different market conditions. Commerce's employ of this benchmark is not in accord with 19 U.S.C. § 1677(5).

20. Lastly, Commerce's findings in this investigation directly contradict the agency's findings elsewhere with respect to Simcoa's purchases of electricity from Synergy. Commerce's treatment of like circumstances differently is arbitrary and capricious.

**COUNT TWO**

**Commerce's Findings Regarding the Countervailability of the R&D Tax Incentive Are Not Supported by Substantial Evidence or Otherwise in Accordance with Law**

21. Simcoa hereby incorporates by reference paragraphs 1 through 15 of this Complaint.

22. Commerce's findings regarding the countervailability of benefits received pursuant to the R&D Tax Incentive are not supported by substantial evidence or otherwise in accordance with law. This program is not specific, in accordance with 19 U.S.C. § 1677(5A), and substantial evidence shows that the R&D Tax Incentive is broadly available across the Australian economy. Moreover, per the Department's regulation at 19 C.F.R. § 351.509, no benefit may lawfully be attributed to POI activities because Simcoa did not apply for the tax incentive during the POI.

**COUNT THREE**

**Commerce's Findings Regarding the Countervailability of Payments Under the CRR Service Are Not Supported by Substantial Evidence or Otherwise in Accordance with Law**

23. Simcoa hereby incorporates by reference paragraphs 1 through 15 of this Complaint.

24. Commerce's conclusions regarding the countervailability of payments to Simcoa under the CRR are not supported by substantial evidence or otherwise in accordance with law. Among other errors, the Final Determination fails to recognize that the CRR does not involve a contribution by any "authority." Critically, the CRR mechanism is not countervailable because it is the sale of a service by Simcoa. Simcoa incurs costs to provide this important service, for which it receives fair compensation. The statute governing financial contributions, 19 U.S.C. § 1677(5)(D), in pertinent part defines a "financial contribution" to include "providing goods or services, other than general infrastructure" or "purchasing goods." The statute thus

unambiguously does not include the purchase of services within the definition of "financial contribution." CRR is also not countervailable as a general infrastructure service. 19 C.F.R. § 351.511.

25. Moreover, the CRR mechanism is not specific in accordance with 19 U.S.C. § 1677(5A). Rather, the CRR mechanism is broadly available, and Commerce's alleged evidence of limited use is not supported by the record.

**COUNT FOUR**

**Commerce's Findings Regarding the Countervailability of Payments Under the DSM Program Are Not Supported by Substantial Evidence or Otherwise in Accordance with Law**

26. Simcoa hereby incorporates by reference paragraphs 1 through 15 of this Complaint.

27. Commerce's findings regarding the countervailability of payments under the DSM mechanism are not supported by substantial evidence or otherwise in accordance with law. Among other errors, the Final Determination fails to recognize that the DSM mechanism is not specific in accordance with 19 U.S.C. § 1677(5A). That is, many eligible electricity consumers can take part in this program. Commerce's alleged evidence of specificity is not supported by substantial evidence.

28. Moreover, DSM is not countervailable because it is the sale of a service by Simcoa, which does not constitute a "financial contribution" under the terms of the statute. DSM is also not countervailable as a general infrastructure service. 19 C.F.R. § 351.511.

29. The record additionally demonstrates that, even if it could be considered a grant, the DSM mechanism did not convey a benefit to Simcoa. 19 U.S.C. § 1677(5)(E).

30. Finally, payments processed through Kleenheat are not countervailable because Kleenheat is not an "authority," as required by the statute. 19 U.S.C. § 1677(5).

## COUNT FIVE

**Commerce's Findings Regarding the Countervailability of Exemptions from RET Program Liability Are Not Supported by Substantial Evidence or Otherwise in Accordance with Law**

31. Simcoa hereby incorporates by reference paragraphs 1 through 15 of this Complaint.

32. Commerce's findings regarding the countervailability of exemptions from RET program liability are not supported by substantial evidence or otherwise in accordance with law. The RET exemption is not specific in accordance with 19 U.S.C. § 1677(5A). RET exemption certificates are available to a diverse and wide range of industries throughout the Australian economy. The record makes clear that 90 Australian companies across 40 industries were issued exemption certificates during the POI. Additionally, the RET exemption certificates are not *de jure* specific because there is no legally imposed limit to any enterprise or industry.

33. Moreover, as Commerce recognized in the Preliminary Determination, Kleenheat is not an "authority" in accordance with 19 U.S.C. § 1677(5) because it is a privately owned and controlled company in which the GOA plays no role. Prelim. IDM at 22. Commerce failed to demonstrate that RET exemptions through Kleenheat were provided at the direction or entrustment of a government, and payments processed via Kleenheat thus may not lawfully be countervailed.

## COUNT SIX

**Commerce's Findings Regarding the Countervailability of the Fuel Tax Credits Program Are Not Supported by Substantial Evidence or Otherwise in Accordance with Law**

34. Simcoa hereby incorporates by reference paragraphs 1 through 15 of this Complaint.

35. Commerce's findings regarding the countervailability of the Fuel Tax Credit program are not supported by substantial evidence or otherwise in accordance with law. The

record demonstrates that the program is broadly available and lacks both *de jure* and *de facto* specificity in accordance with 19 U.S.C. § 1677(5A). The Fuel Tax Credits are generally available across a range of industries and widely used throughout the economy. Simcoa's utilization represents only a small fraction of the overall claims under the program. The record cannot support a finding of specificity.

## COUNT SEVEN

### Commerce's Failure to Allocate Grant Benefits Over the AUL Is Not Supported by Substantial Evidence or Otherwise in Accordance with Law

36. Simcoa hereby incorporates by reference paragraphs 1 through 15 of this Complaint.

37. Commerce's failure to allocate the benefits received under alleged grant programs across the 14-year AUL is not supported by substantial evidence or otherwise in accordance with law. Upon determining certain programs to provide a financial contribution as grants, in accordance with 19 U.S.C. § 1677(5)(D), Commerce should have allocated the benefits across the AUL, as described by its regulation, at 19 C.F.R. § 351.524. The Department's failure to do so was a ministerial error that should have been corrected following issuance of the Final Determination.

## PRAYER FOR RELIEF

Wherefore, Simcoa requests that this Court:

(a) Hold that the Final Determination is unsupported by substantial evidence and otherwise not in accordance with law;

(b) Remand the Final Determination with instructions to Commerce to issue a new determination consistent with the Court's decision; and

(c) Provide such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/ Jonathan T. Stoel
Jonathan T. Stoel
Jared R. Wessel
Michael G. Jacobson
Nicholas R. Sparks
Dexter L. Woods

HOGAN LOVELLS
CADWALADER US LLP
Columbia Square
555 Thirteenth Street, N.W.
Washington, DC 20004-1109
(202) 637-6634
jonathan.stoel@hlc.com

*Counsel to Simcoa Operations Pty Ltd.*

Date: October 19, 2026